**P. J. SPITZ COMPANY, Plaintiff-Appellant v. WARNER & SWASEY COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19085.   Decided May 17, 1943.

H. H. Felsman, Cleveland. for plaintiff-appellant.
Jones, Day, Cockley & Reavis, Cleveland, for defendant-appellee.

282

## OPINION

By SKEEL, J.

The plaintiff herein, a real estate brokerage company, brought this action seeking to recover a commission from the defendant, claiming to have been employed as its agent to procure for it, as purchased, a certain piece of property. The property concerned was adjacent to that of the defendant's manufacturing plant on Carnegie Avenue in Cleveland, Ohio. The property which the plaintiff desired the defendant to buy was under 99 year lease to the Cleveland Builders Supply Company.

The plaintiff first talked to the owner of the fee and was referred to the Cleveland Builders Supply Company. Plaintiff's purpose at that time was to secure the right to act as the agent of the owner of the fee and lessee for the purpose of selling the property. The asking price was given to Mr. Spitz by Mr. Barkwell of the Cleveland Builders Supply Company as $225,000.00. Mr. Spitz suggested that the price was too high and that he felt that $150,000.00 would be a reasonable figure. To this suggestion Mr. Barkwell told Mr. Spitz, the president of the plaintiff company, that they would not sell it for that "but if I have an offer with a check for more than $150,000.00 I should bring it in and they would have a meeting and decide whether to accept it or reject it." Mr. Spitz testified at this point that it was his belief that the property could be bought for about $175,000.00.

After these negotiations with the owner and lessee of the property, Mr. Spitz contacted the defendant company, by having his office girl call the president of the company and after she disclosed the nature of the business which Mr. Spitz desired to take up with the defendant company, she was told by Mr. Stilwell's secretary to see Mr. McDonald, one of the defendant's vice-presidents.

The foundation of plaintiffs claim against the defendant begins with what was said on this occasion which was late in November, 1939. Mr. Spitz told Mr. McDonald that he would like to interest defendant company in the Cleveland Builders Supply Company property but McDonald expressed some doubt as to whether his company would be interested in expanding in that neighborhood. Mr. Spitz told McDonald that he thought the property could be bought for between $165,000.00 and $175,000.00 but that the asking price was $225,000.00. He further stated that if the Cleveland Builders Supply Company knew that The Warner & Swasey Company was interested in the property they would "stick up their price" and so he suggested what he termed a "three-cornered deal" by which he thought he could deliver the property to the defendant for about $175,000.00 but in that event "they (referring to the defendant) would have to pay me a commission as the deal would have to be a net deal." To which suggestion the plaintiff claims McDonald replied.

"Well, if we agree to buy this property, we certainly will buy it through you and gladly pay you your Real Estate Board commission."

Mr. Spitz further testified that McDonald asked to keep the tracing of the property so he could have blue-prints made. This was done, and the next day the tracing was returned to the plaintiff with two extra blue-prints. At that time McDonald told Mr. Spitz that he did not think his company would do anything about the property until after the first of the year.

Mr. Spitz further testified that on January 2, 1940, McDonald phoned him asking that plaintiff get a thirty day option on the property. Mr. Spitz replied to that request by saying that no one else would want the property and to get an option would disclose the identity of the Warner & Swasey Company as a prospective purchaser. McDonald, it is also claimed, asked for the tracing again so he could make more blueprints for the use of his engineers by way of making up a lay-out of the property. At this point McDonald said it would be at least thirty days before the lay-out could be finished and that the plaintiff should call him about the last of January. Mr. Spitz did call at that time and was informed that an additional thirty days would be necessary.

In March when Mr. Spitz called McDonald he was told to see Mr. Warren Morris, a real estate broker, and upon contacting him, Spitz was asked what made him think he could get the property for $175,000.00; to which he replied that he had a way to get it. Morris then told him to go ahead and if he could get it for $175,000.00 to do so and Warner & Swasey would "pay full commissions" but when Morris told Spitz that The Cleveland Builders Supply Company had been approached on behalf of Warner & Swasey Company, he said "in that case it would be futile for me to negotiate for any such figure. * * *"

The record discloses that the property was bought by Warner & Swasey Company through Mr. Morris who had been hired by Mr. Stilwell, the president of the defendant company, for that purpose, for the sum of $180,000.00. What commission was paid and by whom is not disclosed in the record.

The plaintiff, as a part of its case, introduced the Cleveland Real Estate Board rules on commissions and referred specifically to Section 3 of Article A which the court rejected for the reason that said Article referred to cases where the seller employed the services of a real estate broker and not, as is claimed in this case, the buyer employs the real estate broker's services. There can be no doubt, referring to plaintiff's Exhibits A and B, that Article A, Section 3, when read in connection with the rest of the exhibit, does refer to cases where the seller employs the broker's services. The plaintiff seeks to overcome this deficiency by attempting to establish a custom in this community among real estate dealers to use the Real Estate Board formula for determining the commission to be paid by the seller as a means of determining the amount that a buyer should

pay when he employs the services of a broker to purchase property in his behalf.

The court refused to receive the Rule Book (plaintiff's exhibit B) into evidence on the ground that it was no relevant. There was no other evidence of damages offered or received into evidence.

The court offered to permit the plaintiff to amend its petition to found its action on quantum meruit but the plaintiff refused to do so, desiring to stand upon the terms of the contract as pleaded.

At the conclusion of the plaintiff's case the court granted defendant's motion for judgment.

The plaintiff presents two claims of error:

1. That by the evidence taken in its most favorable light a contract is made out between the plaintiff and the defendant whereby the plaintiff was employed to procure `for the defendant the property leased by the Cleveland Builders Supply Company.

2. That the rules of the Real Estate Board providing for the amount of commission to be paid by a seller, together with the general understanding of real estate brokers that said rules are applicable to cases where the purchaser employed the services of the broker to purchase property for him, were properly admissible under the plaintiff's theory of the case.

In considering the first of these two questions, that is, whether or not a contract is made out between the parties by giving the evidence the most favorable interpretation toward the plaintiff's contention, we are met at the very beginning with the authority of McDonald to bind the defendant with regard to the subject matter under consideration. In the first place, the plaintiff was referred to McDonald by an employee in the president's office and secondly, there is not a word of evidence in the record as to the nature and scope of McDonald's duties. If the matter in hand was one which could be said to be daily routine and in the usual course of the defendant's business. the fact of continued negotiations might be said to be some evidence of his authority. But the transaction before us presented a very unusual transaction and the contract contended for is said to have been made at the very first meeting between the plaintiff, (who in fact came to see the defendant as the agent of the Cleveland Builders Supply Company) and McDonald. Upon the face of the record, therefore, it is clear that there is no evidence by which the authority to contract with an agent to buy real property for the defendant was conferred upon McDonald nor was there a course of dealing which would estop the defendant to deny his authority so to act.

In **Ohio Jurisprudence,** Vol. 10, ¶556, page 754, the rule as to the authority of a vice-president is stated as follows:

"The powers inherent in the office of vice-president of a corporation are necessarily very limited; broad powers may of course

be conferred by express or implied authorization, or the corporation may be held estopped to deny the existence of such powers. Thus, it has been held that the vice-president as an agent of the corporation has no inherent power or authority to bind the corporation by a contract for the purchase of land; such a contract, to be binding upon the corporation, must be in pursuance of authority expressly granted or authority that will be deemed to have been delegated by a course of conduct or dealing with the world clearly implying such delegation."

**Boss v Alms & Doepke Co., 17 Oh Ap 314,** was a case where the vice-president who had, because of failing health of the president, begun to take up the duties of that office and that the board acquiesced in matters done by him in the same way as they had done with the president. As vice-president he signed a contract to purchase certain real property and gave a company check of $1000.00 as down payment. When the matter came to the attention of the Board they refused to be bound thereby and this action followed.

The court held, in paragraph 2 of the syllabus:

"The power of an Ohio corporation to acquire real estate being vested by statute in the board of directors, the vice-president of a corporation, as its agent, has no authority to bind the company with a contract to purchase realty, being a transaction of considerable magnitude and not in the usual or ordinary course of a mercantile business, unless such authority is delegated either expressly by action of the board of directors or by such a course of conduct or dealing with the world as would clearly imply authority in the agent."

See also, **Bradford Realty Co. v Gibson, 68 Oh St 442.**

It is true that the corporate code of Ohio was revised and that §8660 which was the basis of the court's opinion in the above cases was repealed but §§8623-55 and 8623-62 GC, which are a part of the present Corporation Code dealing with the authority of the directors and officers, does not change the rule as therein stated. If the defendant would not have been bound by a contract to purchase land because of the lack of authority of its vice-president, Mr. Mc-Donald, it must follow that a like result would obtain in any attempt on his part to contract for the services of a broker to accomplish such purpose without a showing that he acted upon proper authority, express or implied.

We come now to the question of whether or not the acts of McDonald (conceding for the purposes of the argument that he was authorized to do so) did in fact create a contract between the plaintiff and the defendant whereby the plaintiff was employed as de-

fendant's agent to purchase for it the property plotted on plaintiff's exhibit A of the Bill of Exceptions.

The conversation upon which the plaintiff relies as set forth in the statement of facts, in this opinion, was:

"Well, if we agree to buy this property we certainly will buy it through you and gladly pay you your real estate board commission."

This is alleged to have been said by Mr. McDonald at the time Mr. Spitz first met him. Mr. Spitz had called on McDonald after having been employed by the Cleveland Builders Supply Company to find a purchaser for the property. Mr. Spitz as the representative of plaintiff had concluded that if the Cleveland Builders Supply Company knew who the prospective purchaser was they would attempt to hold up the price. At least this was the reason which he gave for suggesting a three-cornered deal which, if worked out, he said would require the purchase of the property at a net price from The Cleveland Builders Supply Company and therefore he would expect the purchaser to pay his regular real estate board commission on the deal.

It must be remembered that this was the first time Spitz had ever met McDonald and suggested this property to the defendant. McDonald's reaction was that he did not know whether his company would be interested in the property or not. Some conversation was had about the difficulty of his company operating their business in a five-story building. It was on the occasion of this preliminary talk about the property that it is claimed that Mr. McDonald said, after Mr. Spitz suggested that if a three-cornered deal was worked out, that the defendant would have to pay the real estate board commission, "Well, if we agree to buy this property we certainly will buy it through you and gladly pay you your real estate board commission."

Giving this language the most favorable interpretation in the interests of the plaintiff's claim, when considered in the light of all the surrounding circumstances, the majority of this court conclude that a contract to employ the services of the plaintiff was not thereby created but that what was intended was an expression of intention or willingness to enter into a contract at some time in the future.

In Volume 1, paragraph 25 of Williston on Contracts (revised edition) the rule as to whether or not an expression of intention to do something upon the happening of a particular event amounts to a contract, is stated as follows:

"Since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event. or in return for something to be received does not amount to an offer."

And also, in paragraph 27, page 54 of the same work, it is said:

"Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is rather that they are inviting offers * * * . Even when the parties are dealing exclusively with one another, by private letters or telegrams, or by oral conversations, the same question may arise; and language that at first sight may seem an offer may be found merely preliminary in its character."

This is certainly true in the instant case. If a contract was created, as claimed by the plaintiff, what were the terms? Must the defendant pay a commission if the price exceeds $175,000.00? If so, to what price level would this be true? If the plaintiff is unable to get the property for the price suggested, but another is able to do so, could the defendant safely buy without becoming liable to the plaintiff? These and many other questions of doubt about the terms of the alleged contract come to mind which the court would be powerless to clear up, when giving the full text of the testimony consideration. The result points to but one conclusion—that the negotiations were yet in a preliminary stage when another was employed to carry out the deal.

Again referring to Volume 1, Williston on Contracts, (revised edition) paragraph 72, page 207:

"An acceptance must be positive and unambiguous. * * * But even though no change in the offer is suggested in the reply of the referee, it nevertheless may not so clearly indicate assent to the offer as to create a contract. Thus a reply to an offer to lease premises in the following terms was held not to make a binding contract: 'I have decided on taking No. 22 Belgrade Road and have spoken to my agent, Mr. C. who will arrange matters with you.' The same is true of a telegram to a bidder for public work: 'You are low bidder. Come on morning train.' Also of the following reply to an offer to sell coal, 'telegram received. You can consider the coal sold. Will be in Cleveland and arrange particulars next week.' "

Section 25, Restatement of Law of Contracts, is as follows:

"If, from a promise or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows of or has reason to know that the person making it does not intend it as an expression of his fixed purpose. until he has given a further expression of assent, he has not made an offer."

"If lack of a fixed ·purpose to make an offer will prevent the manifestation of intention, to make an offer, from binding the offerer when the offeree knows or has reason to know that fact, certainly the same lack of a fixed purpose known to the offerer would prevent a manifestation of intent to accept from binding the offeree."

As indicated, therefore, the majority of this court find that the statements of Mr. McDonald amounted to nothing more than statements of a promissory intention to give further consideration to plaintiff's offer of services at a future date.

We come now to the final question presented, which is as to whether or not the court was· in error in refusing to receive into evidence the rules of the Real Estate Board (plaintiff's exhibit B) in support of its attempt to prove its damages on the claimed breach of contract.

There is no ambiguity about the meaning of the testimony of Mr. Spitz on page 9 of the record when he testified:

"* * * but that I could work out a three-cornered deal· and deliver them the property for certainly no more than $175,000.00 but in that event they would have to pay a net deal."

This evidence is certainly susceptible of the interpretation that because the working out of a three-cornered transaction requires a net deal with the seller, that the buyer should pay the commission that the broker would otherwise be entitled to recover from the seller.

This then would produce a jury question as to the terms of the agreement on the question of compensation and the evidence offered was admissible under the plaintiff's theory of the case.

We ·conclude that the court was in error in excluding this testimony and in holding that the only right of recovery must be upon quantum meruit as a matter of law.

The· judgment of the court being correct, for the reasons herein stated the same is affirmed.

LIEGHLEY, J., concurs.
MORGAN, P. J., dissents.

MORGAN, P. J. (dissenting):

The plaintiff is in the real estate brokerage business and it brought this action to recover a real estate commission from the defendant on the purchase by the defendant of a parcel of real estate for $180,000.00. The plaintiff sued for $5400.00 claiming that

this amount would be the commission as fixed by the rules of the Cleveland Real Estate Board in such a transaction.

P. J. Spitz, the president of the plaintiff company, was the only witness in the case. At the conclusion of the plaintiff's evidence, the trial court granted the defendant's motion for a judgment in its favor.

The facts are given in the majority opinion and it is not necessary to repeat them here. As the record now stands there is no denial of plaintiff's claim that in a conversation between Spitz and McDonald, vice-president of the defendant, Spitz said to McDonald that if the defendant purchased the property involved in this case, plaintiff's commission would have to be paid by the defendant "as the deal would have to be a net deal." To this statement McDonald replied, "Well, if we agree to buy this property, we certainly will buy through you and gladly pay you your Real Estate Board commission." It is conceded that the defendant afterwards purchased this property for $180,000.00.

The plaintiff, as a part of its case, offered in evidence the rules of the Cleveland Real Estate Board fixing the commission to be paid on sales of real estate. The trial judge excluded this evidence on the ground that the rules of the Board fixed the commission only when such commission is to be paid by the seller and as stated by the court: "There is no provision made in the rules exhibited to the court for collecting a commission" when the commission is to be paid by the purchaser. With this evidence excluded, the plaintiff's case lacked any proof as to the amount the defendant had agreed to pay plaintiff by way of commission and the opinion of the trial court shows that for this reason alone he granted defendant's motion for judgment at the conclusion of plaintiff's case.

That the trial court erred in excluding the rules of the Cleveland Real Estate Board fixing commissions, is conceded in the majority opinion in this case. It states that McDonald's statement to Spitz is susceptible of the interpretation "that the buyer should pay the commission that the broker would otherwise be entitled to recover from the seller."

In my opinion, this is the only possible interpretation of McDonald's statement. When McDonald told Spitz that if the defendant should buy this property "we certainly will buy through you and gladly pay you your Real Etate Board commission" he meant and both parties understood him to mean that as purchaser the defendant would pay plaintiff the regular real estate commission fixed by the Real Estate Board, usually (but not always) paid by the seller.

If the rules of the Real Estate Board had been admitted in evidence there would have been evidence to go to the jury as to plaintiff's damages. As the trial court erred in excluding this evidence, as is conceded in the majority opinion, it follows that the

only reason assigned by the trial court for granting defendant's motion for judgment is without merit or validity.

The defendant, however, maintains that the trial court was right in granting defendant's motion for judgment on other grounds. It contends, first, that "the conversation between Spitz and McDonald contained only statements of promissory intention which were quite insufficient to create a contract." The defendant in its brief cites cases and text books to the effect that statements of promissory intention are not sufficient to create a contract.

It is my opinion that these authorities are not applicable to the facts in the present case. None of them deal with the creation of the relation of principal and agent and their reciprocal obligations to each other. "As between principal and agent the creation of the agency relationship arises from the consent of the parties." 2 American Jurisprudence 25. "Relationship of principal and agent can be created although neither party received consideration." 1 Restatement of Law of Agency, page 53, Sec. 16.

Whether or not the conversation between defendant's vice-president McDonald, and Spitz, was sufficient to create the relation of principal and agent between plaintiff and defendant can be tested. After this understanding was reached between McDonald and Spitz, the latter would have violated his obligation to defendant if he had attempted to purchase the property involved, upon his own account and for his own benefit, 2 Amer. Juris. pages 202, 203, 210. Clearly, Spitz as agent owed the defendant the duty of loyalty. Defendant's reciprocal obligation, if it decided to buy the property, was, according to the undisputed record, "to buy it through you (that is, the plaintiff)" and "to gladly pay you your Real Estate Board Commission."

In an early conversation between Spitz and a representative of the Cleveland Builders Supply Company, which had a long-term lease on the property, with an option to buy, this representative had put a price of $225,000.00 on the property. The question whether if Spitz had found a purchaser at that figure he would have been entitled to a commission from the seller does not arise in this case. On cross-examination, Spitz testified that it was his understanding that prior to his conversation with McDonald he was representing the owners of the property. It is clear, however, that Spitz made no attempt to find a purchaser at the price fixed by the seller of $225,000.00 and did not at any time attempt to represent the seller.

It is not claimed that Spitz violated any duty owing to the seller when he agreed to represent the defendant on the understanding that the commission would be paid by defendant if it purchased the property. The record discloses nothing ambiguous either in Spitz' relation to the parties or in his conduct.

It is my opinion, therefore, that decisions to the effect that "statements of promissory intention are insufficient to create a

contract are wholly beside the point, and do not apply to the re-lationship of principal and agent in this case.

The defendant maintains as its second additional ground for af-firmance of this case that there is no evidence in the record that. McDonald, as vice-president of the defendant had any authority to. employ Spitz as an agent. Cases cited by the defendant which hold. that it will not be presumed that the vice-president of a company has authority to bind the company by a contract for the purchase of. land, are not in point in this case.

McDonald in this case did not attempt to buy the land in ques-tion.. He availed himself of the services of an agent and retained. for the defendant complete freedom to decide later whether it would. purchase the property. If it decided not to purchase no compensa-tion would be due the agent.

Plaintiff's office first called the office of the president of the de-fendant and informed the president's secretary that Spitz wished to confer with him as to property which the defendant might be in--terested in purchasing. Later the secretary to the president of de--fendant company instructed Spitz to call on McDonald, a company-vice-president on this matter.

Whether Spitz' request was ever brought to the attention of the-defendant's president does not affirmatively appear. The secretary-of the president of such a company as the defendant is an important. person. No one was in a better position to know the allocation of' functions in the large and rapidly growing business of the defendant. among its principal officers than the secretary to the president. The-fact that after inquiry the president's office, through the president's secretary, instructed Spitz to see McDonald about this property is. some evidence as to the authority of McDonald in the matter.

McDonald himself seems to have had no doubt as to his au--thority. The record shows that on McDonald's request Spitz fur--nished him with a tracing of the property to make blue-prints so. that defendant's engineers could lay out the plant. He even sug-gested to Spitz that the latter get a 30-day option on the property-but Spitz convinced him that such action would be unwise and un-necessary until the defendant had determined to proceed with the-purchase.

All this is some evidence that McDonald, during the period of' some months, was handling for the defendant the securing of addi-'tional property made necessary by its rapidly increasing business. Warner & Swasey Company is one of the principal manufacturers' in this country of machine tools. The war caused a great multipli--cation of the demand for defendant's products and made expansion-necessary.

There is no evidence that McDonald's activities in handling this-matter were ever disowned by the defendant. When later Morris was employed by the defendant to negotiate the purchase of the property, the reason assigned was not that McDonald had exceeded'

his authority, but rather that Morris was a school friend of the president and for that reason the president wished Morris to handle the negotiations.

It is also true that the old idea that a vice-president of a corporation is an official whose only power is to take the place of the president when the latter is absent, ill or otherwise disqualified, no longer holds in the case of a vice-president of a large company today. The vice-president is usually an official of broad powers to whom is allocated definite responsibilities for some part of the company's business and problems.

It is my opinion, therefore, that there was evidence to go to the jury that McDonald, as vice-president of the defendant company had authority to appoint Spitz as an agent to assist the defendant in its negotiations for the property in question.

The third and final additional reason urged by the defendant for affirmance is that the plaintiff "by refusing to perform" cannot recover in this case.

This claim is without merit. It is based on evidence that after the defendant had decided to supplant Spitz and to employ Morris to handle the negotiations for this property, Morris, without consulting Spitz, and without his knowledge, got in touch with the owners and informed them that he represented The Warner & Swasey Company as a possible purchaser for the property in question. Later Morris told Spitz that if the latter could still buy the property for $175,000.00 he would be paid his commission and the defendant contends that by failing to act on this suggestion, Spitz lost any right to a commission that he otherwise might have had

There is nothing in the record to indicate that defendant found any fault with anything that Spitz did or failed to do. Nevertheless, when Morris said to Spitz (it does not appear by what authority) that if the latter could buy the property for $175,000.00 he would be paid his commission, the matter had already been taken out of Spitz' hands and when the owners were advised that The Warner & Swasey Company was negotiating for the property, Spitz' advice as to how the matter should be handled had been disregarded When Spitz told McDonald that he believed the property could be bought for $175,000.00 it was on the basis that the owners should not be informed that The Warner & Swasey Company was in the market for the property.

Clearly, it cannot be said on this state of the facts that the plaintiff, as a matter of law, lost its right to a commission by reason of the refusal of Spitz to perform. At best, it was a question for the jury.

Inasmuch as the reason assigned by the trial court for granting defendant's motion for judgment at the conclusion of plaintiff's case was without merit and the other reasons advanced by defendant's counsel are equally so, I dissent from the judgment of affirmance in this case.